**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| In re: | : | Chapter 7 |
| Michael Ginn, | : | Bankruptcy No. 19-15039-MDC |
| Debtor. | : | |
| | | |
| Terry P. Dershaw, in his capacity as chapter 7 | : | |
| Trustee, and Leslie Fleisher, as the Administrator | : | |
| of the Estate of Barbara Fleisher, | : | |
| Plaintiffs, | : | |
| v. | : | Adversary No. 22-00091-MDC |
| Herman Family Trust, *et al.*, | : | |
| Defendants. | : | |

# **MEMORANDUM**

**I.    INTRODUCTION**

The plaintiffs (together, the "Plaintiffs") in the above-captioned adversary proceeding filed a complaint (the "Complaint")[1] against the defendants (collectively, the "Defendants" and together with the Plaintiffs, the "Parties"), seeking relief related to certain notes (the "Notes") and mortgages (the "Mortgages") on two properties in Medford, New Jersey (the "Properties"). The Complaint presses seven counts, the first six of which assert claims for foreclosure, possession of the Property, and breach of contract, all related to the Defendants' alleged default under the Notes and Mortgages. The seventh count of the Complaint (the "Settlement Agreement Count") asserts a separate breach of contract and specific performance claim, based

---

[1] Adv. Pro. Docket No. 1.

on the Defendants' alleged breach of a settlement agreement with the Plaintiffs providing for the execution of a deed-in-lieu with respect to the Properties.

The Defendants filed an Answer with affirmative defenses,[2] and discovery ensued. Now pending before the Court for resolution are the Parties' dueling motions for summary judgment (each a "Summary Judgment Motion")[3] solely with respect the Settlement Agreement Count, to which each Party filed an opposition (each an "Opposition").[4] The Court held a hearing on the Summary Judgment Motions and Oppositions on August 2, 2023, after which the Court took the matter under advisement.

For the reasons set forth herein, the Court will deny both of the Summary Judgment Motions.

## II.    RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

### A.    The Hermans

Sean Herman ("Sean"), Michael Herman ("Michael"), and David Herman ("David") are brothers (together, the "Herman Brothers"). Their father is Philip Herman ("Philip").

### B.    The Herman Trust and the Herman Partnership

In March 2000, Philip, as grantor, established a New Jersey trust (the "Herman Trust"), governed by a trust agreement (the "Trust Agreement"). The designated trustees of the Herman Trust were originally Michael, David, and an individual named Gary Peiffer ("Mr. Peiffer"). Mr. Peiffer subsequently resigned as a trustee in September 2005 and appointed Sean as successor trustee. As such, the co-trustees of the Herman Trust since September 2005 have been and are

---

[2] Adv. Pro. Docket No. 9.

[3] Adv. Pro. Docket Nos. 30, 32.

[4] Adv. Pro. Docket Nos. 36, 37.

the Herman Brothers.

Also in March 2000, Philip, Michael, David, and Mr. Peiffer entered into a Limited Partnership Agreement (the "LP Agreement") with respect to the Herman Family Limited Partnership (the "Herman Partnership"), formed under New Jersey law. Philip was designated as the General Partner under the LP Agreement, with Philip holding a 1% interest as such and a 98% interest as a Limited Partner. The remaining 1% interest in the Herman Partnership was held by the Herman Trust.[5]

    C.    **The State Court Action**

Much of the factual background related to the Notes and Mortgages is not relevant to the Court's resolution of the Parties' present dispute with respect to the Settlement Agreement Count. It is enough to state that between 2005 and 2007 the Herman Trust, through some or all of the Herman Brothers as co-trustees, executed the Notes and Mortgages, secured by the Properties. Either by assignment from the original lender or by virtue of their own lending to the Trust, Michael Ginn ("Mr. Ginn") and Barbara Fleisher ("Ms. Fleisher") came to hold the Mortgages for the Properties.

In May 2019, Mr. Ginn and Ms. Fleisher filed suit in New Jersey state court (the "State Court") against the Herman Trust, the Herman Partnership, and the Herman Brothers as co-

---

[5] Exhibit D to Plaintiffs' Summary Judgment Complaint attaches the equity split in the Herman Partnership as of June 2, 2010, as reflected in the partnership's list of equity partners filed in its chapter 11 bankruptcy case in the District of New Jersey. See Bankr. Case No. 10-25398 at Docket No. 8. That split was as follows: Philip Herman (1%), Michael Herman (16.5%), David Herman (16.5%), Sean Herman (16.5%), Leslie Dill (16.5%), Samantha Herman (16.5%), and Sara Herman (16.5%). The Court does not have any evidence that the current equity split differs from the split reflected therein, but for purposes of the present motion, what is relevant is whether Philip is the General Partner and the Herman Brothers are each Limited Partners, regardless of their percentage equity split.

trustees of the Herman Trust (the "State Court Action").[6] The Complaint asserted that default had occurred under certain of the Notes and Mortgages, and sought judgment with respect to amounts allegedly due thereunder and possession of the Properties. The Complaint also sought reformation of the underlying Mortgages to include as mortgagor the Herman Partnership, which held legal title to the Properties but was mistakenly omitted, with the Herman Trust instead being identified as the mortgagor.

On August 27, 2021, the State Court entered an Order in the State Court Action denying the request to reform the Mortgages at issue.[7] Also on that date, the State Court dismissed the State Court Action without prejudice for lack of prosecution.

### D.     The Settlement Discussions

Ms. Fleisher died on September 20, 2020, after which Andrew Unterlack ("Mr. Unterlack"), a New Jersey attorney who had been representing Mr. Ginn and Ms. Fleisher in the State Court Action, represented her testamentary estate. Mr. Ginn, who had filed the above-captioned bankruptcy case on August 9, 2019, died on March 3, 2021. On May 3, 2021, the Court entered an Order approving the employment of Mr. Unterlack as special litigation counsel to the Trustee with respect to, inter alia, foreclosure issues relating to the Properties. Although the record on summary judgment lacks precision as to when the Parties commenced settlement discussions, it appears that at some point in November 2021, Sean and Mr. Unterlack began

---

[6] The Complaint also named the United States, the State of New Jersey, and John Doe and Jane Doe 1 through 10.

[7] The Order denying reformation, attached to the Affidavit of Ronald Davison (the "Davison Affidavit") as Exhibit D, see Adv. Pro. Docket No. 32-13, refers to a motion for an order seeking reformation, rather than a count of the Complaint. The Davison Affidavit does not shed light on why the Order references a motion, but the Order clearly denies the request for reformation, whatever the procedural mechanism.

discussing resolution of the claims pressed in that action.[8]

Over the several ensuing months, Mr. Unterlack and Mr. Herman engaged in negotiations consisting of email exchanges and telephone calls regarding a proposed settlement pursuant to which the Herman Trust, through the Herman Brothers as co-trustees, would execute a Deed in Lieu of Foreclosure for the Properties (the "Deed in Lieu"). Versions of a proposed Deed in Lieu were exchanged and revised during the negotiations. While Sean was negotiating revisions with Mr. Unterlack, he was also engaging with Philip to obtain his comments and changes to the Deed in Lieu and related documents.

What then occurred beginning in April 2022 forms the crux of the dispute between the Parties concerning the Settlement Agreement Count. On April 5, 2022, after a series of email exchanges and revisions to the Deed in Lieu, Sean emailed the following to Mr. Unterlack: "I think we are now all good with the changes. Can you send over final copies for signature when you can? Thanks." Mr. Unterlack promptly responded the same day, "Excellent!! I will have execution copies sent over to you today," and subsequently emailed execution copies, which added the Herman Partnership as a signatory, writing "[p]lease circulate among the Trustees for execution." Mr. Unterlack then followed up with Sean on April 14 and April 26, 2022, having not received executed documents, inquiring as to when he could expect them. Sean responded on April 28, 2022 that he would "follow up on [his] end re: approval and signatures," and advised that one issue arose that he needed to resolve.

On May 3, 2022, however, Sean emailed Mr. Unterlack, in relevant part, as follows: "We need to retain independent counsel to review the agreement before we sign it … I'll let you know

---

[8] The testamentary estate of Ms. Fleisher and the bankruptcy estate of Mr. Ginn will hereafter be referred to together as the "Plaintiffs."

once we retain counsel and the contract review is underway." Mr. Unterlack responded by email the same day, addressing tax liability concerns Sean had evidently previously relayed to him, and stating that "While [he] understood the desire to seek independent counsel to advise on tax liabilities, it should be limited to that and not re-opening of discussion of terms … As the tax liability is a future event that will occur regardless of whether this ends in a Sheriff's Sale or [Deed in Lieu], the tax implications are secondary to executing the documents. Please have the [Deed in Lieu] documents executed and returned, leaving you to have counsel guide how to handle the resulting future tax implications, if any." Sean and Mr. Unterlack thereafter exchanged several cursory emails that resulted in a phone call on June 15, 2022, after which Sean followed with an email stating that he would follow up with Mr. Unterlack the following week.

On or about June 17, 2022, however, the Trustee's counsel sent a letter to Sean advising that if an executed Deed in Lieu and related paperwork was not received by June 23, 2022, the Trustee would take further action to initiate an investigation and/or examination under Federal Rule of Bankruptcy Procedure 2004 ("Rule 2004"). On June 24, 2022, the Trustee filed a motion to conduct Rule 2004 examinations of the Herman Trust, the Herman Partnership, and Sean (the "Rule 2004 Motion").[9] The Court held a hearing on the Rule 2004 Motion on July 20, 2022, after which it entered an order granting the motion.[10] The Plaintiffs thereafter filed the Complaint on December 13, 2022.

### III. DISCUSSION

#### A. Standard for Summary Judgment

---

[9] Bankr. Docket No. 220.

Motions for summary judgment are governed by Rule 56 of the Federal Rules of Civil Procedure. Pursuant to Rule 56, summary judgment should be granted when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary judgment is appropriate only when, drawing all reasonable inferences in favor of the nonmoving party, there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See, e.g., Tri-M Group, LLC v. Sharp*, 638 F.3d 406, 415 (3d Cir. 2011); *In re Bath*, 442 B.R. 377, 387 (Bankr. E.D. Pa. 2010). For purposes of Rule 56, a fact is material if it might affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The moving party has the burden of demonstrating that no genuine issue of fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

In evaluating a motion for summary judgment, the court's role is not to weigh the evidence, but to determine whether there is a disputed, material fact for resolution at trial. *Liberty Lobby, Inc.*, 477 U.S. at 249. If, in evaluating the record and making all reasonable inferences therefrom in the light most favorable to the party opposing the motion, it appears that the evidence "is so one-sided that one party must prevail as a matter of law," the court should enter judgment in that party's favor. *Liberty Lobby*, 477 U.S. at 252. If the moving party bears the burden of proof were the matter to proceed to trial, the movant must support its motion with credible evidence that would entitle it to a directed verdict if not controverted at trial. *Lee v.*

---

[10] Bankr. Docket No. 228.

*6209 Mkt. St., LLC (In re Lee)*, 2022 Bankr. LEXIS 675, at *9 (Bankr. E.D. Pa. Mar. 15, 2022) (*quoting In re Polichuk*, 506 B.R. 405, 420-22 (Bankr. E.D. Pa. 2014)).  The evidence must establish all essential elements of the movant's case, and if this initial burden is met, the responding party must designate specific factual averments through the use of affidavits or other permissible evidentiary material which demonstrate a genuine issue of material fact to be resolved at trial.  *Id*.  When the non-moving party bears the burden at trial and the movant meets its burden of directing the court to items demonstrating the absence of a genuine issue of fact, the non-moving party must produce evidence sufficient to create a genuine issue.  *Davenport v. Medtronic, Inc.*, 302 F. Supp. 2d 419, 435 (E.D. Pa. 2004).  That is, to survive summary judgment, the nonmovant must "do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986).

    **B.**    **The Parties' Arguments**

        **1.**    **The Plaintiffs' Summary Judgment Motion**

The Plaintiffs' Summary Judgment Motion asserts it has been conclusively established that (a) in his negotiations with Mr. Unterlack, Sean was serving as counsel to the Herman Trust and to the Herman Partnership, in addition to serving as a trustee to the Herman Trust, (b) Philip, as the General Partner of the Herman Partnership, approved the Deed in Lieu documents and authorized them to be sent to David and Michael for signature, and (c) Sean's April 5, 2022 email to Mr. Unterlack stating that "we are now all good with the changes" and requesting final versions of the Deed in Lieu and related documents, contained "clear and unequivocal language

… [and] created a binding settlement on the terms of the Deed in Lieu."[11]

The Plaintiffs argue that whether a settlement agreement is enforceable depends on whether both parties have manifested an intention to be bound by its terms and whether its terms are sufficiently definite to be specifically enforced, and that under this standard, all material terms of the settlement had been agreed to as of April 5, 2022. The Plaintiffs argue that Sean and Philip bound the Herman Partnership and the Herman Trust in different, but related, capacities. First, as their counsel in the settlement negotiations, Sean bound the Herman Trust and the Herman Partnership to executing the Deed in Lieu documents because an attorney is presumed to possess authority to act on behalf of his or her client, settlement stipulations made by attorneys when acting within the scope of their authority are enforceable against their clients where the parties' objective intent to be bound is outwardly manifested, and Sean's actions and communications with Mr. Unterlack were consistent with an attorney with authority to settle the Parties' dispute. Second, Philip approved the Deed in Lieu and therefore bound the Herman Partnership as its General Partner, but even if he did not, Sean did in such capacity.[12] Third, Sean bound the Herman Trust because, although the Trust Agreement is allegedly silent on the authority of a trustee to bind the trust, under New Jersey law Sean, as a trustee, had the authority to make decisions on behalf of the trust, and represented to Mr. Unterlack that he was acting on

---

[11] Plaintiffs' Summary Judgment Motion, at ¶¶93-96, 119-120, 127-129.

[12] Confusingly, and seemingly in the alternative, the Plaintiffs argue in their Summary Judgment Motion that Philip may have no longer been the General Partner of the Herman Partnership, either (a) because the partnership's certificate was administratively revoked by the State of New Jersey in 2008; and/or (b) because under New Jersey law a person ceases to be a general partner of a limited partnership upon the partnership's filing of a voluntary bankruptcy petition, which the Herman Partnership did under chapter 11 of the Bankruptcy Code in May 2010. In the event Philip no longer validly served as the General Partner in April 2022, the Plaintiffs assert that Sean, David and Michael became general partners, and as such Sean could and did approve the Deed in Lieu on behalf of the Herman Partnership.

behalf of the Herman Trust. Finally, the Plaintiffs argue that even if there is a material disputed fact regarding Sean's authority to approve the settlement on behalf of the Herman Partnership and the Herman Trust, each entity ratified the settlement by failing to repudiate it until more than three weeks after receiving the April 5, 2022 execution versions of the settlement documents.

The Defendants respond in their Opposition that the Plaintiffs' argument fails because the New Jersey statute of frauds, applicable to the enforceability of agreements for the transfer of title to real estate, requires that such agreements are only enforceable if "established in a writing signed by or on behalf of the party against whom enforcement is sought; or … the existence of the agreement and the identity of the transferor and the transferee are proved by clear and convincing evidence." *See* N.J.S.A §25:1-13. The Defendants argue that application of this statute dispenses with the Plaintiffs' argument that the April 5, 2022 email correspondence between Sean and Mr. Unterlack created an enforceable agreement, because neither the proposed settlement agreement nor the Deed in Lieu were ever signed. According to the Defendants, both counsel understood execution to be required, as evidenced by Mr. Unterlack's repeated inquiries to Sean regarding the status of signatures. The Defendants further argue that to the extent the Plaintiffs rely on telephone conversations between Sean and Mr. Unterlack pre-dating the April 5, 2022 email exchange, those are likewise an unenforceable oral agreement under the statute of frauds.[13] Given the absence of a written agreement, and pointing to Sean's declaration in support

---

[13] The Defendants argue that Mr. Unterlack's statement in his affidavit in support of the Plaintiffs' Summary Judgment Motion that he and Sean spoke between March 28 and April 5, 2022, during which Sean "confirmed that (1) all negotiations regarding the Deed-in-Lieu and the all [sic] ancillary documents were complete and (2) they were ready to be signed by both the Trust and the Partnership," is undermined by his deposition testimony, which failed to identify any such claimed conversation or that a deal had been reached. See Adv. Pro. Docket No. 30-9 (the "Unterlack Affidavit") and Defendants' Opposition at 7-8.

of the Defendants' Summary Judgment Motion (the "Sean Declaration")[14] stating that at no time did he tell Mr. Unterlack that they had reached an agreement or that the Herman Partnership and the Herman Trust had agreed to the settlement, the Defendants argue that the Plaintiffs fail to establish by clear and convincing evidence the existence of a settlement agreement to give the Plaintiffs a Deed in Lieu.

### 2. The Defendants' Summary Judgment Motion

The Defendants assert by their Summary Judgment Motion that the "irrefutable evidence in the motion record is that [they] never approved and never signed either the proposed agreement to give the deed in lieu of foreclosure or the proposed deed-in-lieu itself."[15] Echoing the arguments outlined above in the Defendants' Opposition, the Defendants argue that the New Jersey statute of frauds[16] bars the Settlement Agreement Count because there is no written agreement executed by the Defendants to issue a Deed in Lieu, nor is there an executed Deed in Lieu, nor do the undisputed facts of record establish by clear and convincing evidence the existence of an agreement by the Defendants to sign the Deed in Lieu documents. Rather, the Defendants argue that the email exchange between Sean and Mr. Unterlack show, at most, an agreement as to the form of the Deed in Lieu documents that still required the approval and signature of all parties involved. Moreover, the Defendants argue, even if the Court were to consider traditional contract enforceability law, such law requires a written and signed agreement as a prerequisite to enforcement if the parties intended that the agreement would be reduced to

---

[14] Adv. Pro. Docket No. 32-2, at ¶18.

[15] Defendants' Summary Judgment Motion, at 14.

[16] The Defendants argue that New Jersey law applies whether the Court looks to the choice of law provisions in the Notes and Mortgages or conducts a choice of law analysis, because New Jersey has the most significant relationship with the Properties.

writing and signed by the parties, and here the email negotiations between Sean and Mr. Unterlack evidence that they both expected and required the Deed in Lieu documents to be executed by representatives of the Partnership and the Trust. Finally, the Defendants argue, the alleged agreement was not enforceable even if they had promised to execute it because they were to receive no consideration in exchange for the Deed in Lieu, given that the Plaintiffs' claims on the Notes and Mortgages were time-barred under New Jersey's six-year statute of limitations.

The Plaintiffs respond in their Opposition that the declarations of Philip and Sean on which the Defendants rely represent revisionist history that are belied by the email correspondence of record.[17] First, they assert the email correspondence establishes that Philip approved the Deed in Lieu documents on behalf of the Herman Trust, notwithstanding his assertion in his supporting declaration (the "Philip Declaration") that he "never agreed to … Plaintiffs' proposed deed in lieu of foreclosure or any other settlement agreement concerning Plaintiffs' disputed claims over the mortgage notes and mortgages."[18] They also assert the email correspondence does not support Sean's statement in the Sean Declaration that "[i]t was always my intention during those negotiations to obtain from Mr. Unterlack a final proposed settlement agreement and deed-in-lieu to provide the other co-trustees and co-limited partners for their

---

[17] The Plaintiffs argue that the Court should disregard the Philip Declaration and the Sean Declaration under the "sham affidavit doctrine," citing caselaw supporting the principle that a party cannot create a disputed factual issue by contradicting his or her own previous sworn statement. In making this argument, the Plaintiffs assert that the Court need only look at the email correspondence. Even if the statements in the Philip and Sean Declarations contradict their statements in the emails, however, the emails are not prior sworn statements that would trigger the sham affidavit doctrine. The Court will therefore evaluate the statements in the declarations against the email correspondence in determining whether a disputed factual issue exists.

[18] Adv. Pro. Docket No. 32-19.

consideration and approval."[19]  The Plaintiffs argue that there is not a single email leading up to the April 5, 2022 exchange between Sean and Mr. Unterlack where Sean stated or even intimated an intention to obtain final Deed in Lieu documents which he would then submit to Philip, Michael and David for approval.  The Plaintiffs argue that, in the absence of any such disclosure, Mr. Unterlack reasonably relied on Sean's April 5, 2022 email stating that "we are all good to go" in believing the matter settled and signatures ready to be collected.  The Plaintiffs challenge the Defendants' assertion that the New Jersey statute of frauds renders the Deed in Lieu documents unenforceable, arguing that there is no requirement in the statute that an agreement be agreed to and approved as the Defendants argue.  The Plaintiffs also contest the Defendants' assertion that their claims on the Notes and Mortgages are time-barred under New Jersey law, arguing that the Defendants failed to raise a statute of limitations defense in the State Court Action and therefore are barred by collateral estoppel from raising it in this proceeding, but even if they were not, the statute of limitations under New Jersey law for a mortgage foreclosure case is twenty years.

    **C.**    **Analysis**

The viability of the Settlement Agreement Count hinges on whether the Parties reached an agreement that all relevant parties approved.  With respect to the Defendants, the Deed in Lieu called for the signatures of each of the Herman Brothers as trustees of the Herman Trust and well as the signature of a representative of the Herman Partnership.

Sean served as counsel to both the Herman Partnership and the Herman Trust.[20]  The Plaintiffs argue that his negotiations with Mr. Unterlack, resulting in his April 5, 2022 email

---

[19] Sean Declaration, at ¶11.

asking for execution copies of the Deed in Lieu documents, served to bind the Herman Partnership and the Herman Trust to the settlement he had negotiated. The Court disagrees. In general, an attorney has no authority to settle their client's case solely by reason of their general power to handle the case. *See, e.g., Garabedian v. Allstates Engineering Co.,* 811 F.2d 802, 803 (3d Cir. 1987) (citing *Holker v. Parker,* 11 U.S. (7 Cranch) 436, 452, 3 L. Ed. 396 (1813)). Rather, an attorney can only do so if the client has authorized it. *Id.* Furthermore, while there is a presumption that a settlement entered into by an attorney has been authorized by the client, rebuttal of the presumption renders any purported settlement ineffective. *Id.* As such, contrary to the Plaintiffs' argument, Sean could not and did not bind the Herman Partnership and the Herman Trust to the Deed in Lieu documents simply by virtue of his role as counsel to each.

      Nor did he do so by his April 5, 2022 email to Mr. Unterlack stating "I think we are now all good with the changes." There is no clarity from that email as to what Sean's use of the term "we" meant; notwithstanding the Plaintiffs' argument that it clearly reflects the agreement of the Herman Partnership and the Herman Trust to the settlement terms reflected in the revised documents, it just as easily could have referred to Sean and Mr. Unterlack as the individuals revising the documents. Even if, based on the email correspondence between Sean and Philip, it could be argued that it referred to those two, there are no communications of record that support the argument that David and Michael were also consulted and signed off on the revised documents, and therefore were included in Sean's use of the term "we". As such, the April 5, 2022 email is inconclusive at best, and certainly does not establish that all parties acting on behalf of the Herman Partnership and Herman Trust had agreed to the settlement, such that Sean

---

[20] See Adv. Pro. Docket Nos. 31 and 37-1, at ¶1.

as their counsel had authority to agree to it. Mr. Unterlack was aware of the multiple "hats" Sean was wearing, and therefore the Court finds that he could not have, as the Plaintiffs assert, reasonably relied on Sean's April 5, 2022 email to reach the unassailable conclusion that all necessary parties had approved the settlement. Rather, Mr. Unterlack should have required Sean to confirm as much. The question is therefore whether, putting aside Sean's inconclusive April 5, 2022 email to Mr. Unterlack, each of the Herman Partnership and the Herman Trust approved the authorized the Deed in Lieu documents or otherwise authorized Sean to settle the Plaintiffs' claims against them without their approval of the documents.[21]

Turning first to the Herman Partnership, the Court finds there is no material dispute that Philip, as General Partner, approved the Deed in Lieu documents on behalf of that entity, thereby binding it. As early as December 3, 2021, Sean was consulting with Philip regarding settlement of the Plaintiffs' claims and the Deed in Lieu documents.[22] In the ensuing months, Sean and Philip exchanged numerous emails, and it appears telephone calls, to discuss the drafts of the Deed in Lieu documents.[23] Sean expressly asked for, and Philip gave, thoughts and comments regarding the drafts. This back-and-forth culminated in the following exchange between Sean and Philip on April 5, 2022, *after* Mr. Unterlack had sent final versions of the Deed in Lieu documents:

> **Sean:** One last look before we send to Michael and David for signature?

---

[21] While a presumption exists that an attorney entering into a settlement has been authorized to do so, here the question is whether a settlement was entered into at all, which turns on whether the Herman Partnership and the Herman Trust approved it.

[22] See Plaintiffs' Summary Judgment Motion, at Ex. J.

[23] Id. at Exs. K through Q.

>       **Philip:** Thank you. It's ready to go[.][24]

The series of communications between Sean and Philip between December 2021 and April 2022 make clear that Philip reviewed, commented on, and ultimately approved the Deed in Lieu documents. He did so in the only capacity in which his approval would have been needed, *i.e.,* as the General Partner of the Herman Partnership. Although the sham affidavit doctrine is not applicable here because emails are not prior sworn statements, in view of the emails between Sean and Philip, the Court finds that no genuine disputed fact is created by Philip's self-serving statements in the Philip Declaration that he was only "aware that Plaintiffs made several offers to settle" but he "never agreed" to the Deed in Lieu documents. The emails between him and Sean clearly belie that representation. The Court therefore finds that the Philip agreed to the Deed in Lieu documents in his capacity as General Partner of the Herman Partnership, thereby binding that entity to the settlement.

The remaining question is whether there is any genuine dispute that the Herman Trust likewise agreed to the settlement. What is critical in the analysis here is that, although Sean represented the Herman Trust as counsel, he was also only one of three co-trustees. He could not bind the Herman Trust over the objection of both of his co-trustees. Critically, although the Plaintiffs argue that the Trust Agreement is silent on the authority of a trustee to bind the Herman Trust, the Court finds it is not. The agreement provides that the co-trustees have the power to sell, liquidate, or otherwise dispose of all or any part of, *inter alia,* the Herman Partnership (Article Y.7), sell any variety of real or personal property (Article EE.1), and compromise and settle claims (Article EE.7). It also provides, however, that a majority of the

---

[24] Id. at Exs. R, S.

co-trustees must agree (Article AA). Specifically, "[i]n the event of a disagreement among my fiduciaries, the decision of the majority shall control and shall be effective as if the decision had been made unanimously."[25] This provision of the Trust Agreement makes clear what the Plaintiffs argue is unaddressed: Sean, as a co-trustee, could not bind the Herman Trust where David and Michael, as the other two co-trustees, disagreed. David and Michael have submitted Declarations stating that they did not agree to the proposed settlement or to execute the Deed in Lieu on behalf of the Herman Trust.[26] Therefore, even if the Court could find that Sean, in his capacity as a co-trustee, agreed to the settlement and execution of the Deed in Lieu documents, the record on summary judgment does not establish that such agreement was sufficient to bind the Herman Trust.[27]

Nor does the Court agree that David and Michael ratified the Deed in Lieu documents based on Sean's failure to raise the need to retain independent counsel until approximately three weeks after the execution versions of the documents were emailed to Sean. Where a majority of the co-trustees did not agree to the settlement, they did not nonetheless ratify it by Sean taking longer than the Plaintiffs would have liked to communicate that his client or clients elected to have independent counsel review the Deed in Lieu documents; any delay from Sean as counsel

---

[25] Regarding the use of the term "fiduciaries," Article X of the Herman Trust Agreement provides that "In this Agreement, I sometimes refer to my Trustees as 'my fiduciaries.' Any references in this Agreement to my Trustees or my fiduciaries shall include (unless otherwise provided) all Trustees."

[26] See Adv. Pro. Docket No. 32-17, at ¶3, and Adv. Pro. Docket No. 32-18, at ¶4 (misnumbered), whereby both David and Michael state "I never agreed to nor have I ever signed Plaintiffs' proposed deed-in-lieu of foreclosure agreement concerning Plaintiffs' disputed claims over the subject mortgage notes and mortgages."

[27] Nor was Philip's April 5, 2022 email to Sean, stating that the Deed in Lieu documents were "ready to go" to David and Michael for signature. As discussed supra, Philip was the grantor under the Herman Trust Agreement, but he was not a co-trustee and had no authority to bind the Herman Trust or direct David and Michael to approve the Deed in Lieu documents.

does not serve to ratify the agreement over the non-consent of the co-trustees. *See, e.g., In re Kollell Mateh Efraim, LLC,* 2007 Bankr. LEXIS 698, at *37 (Bankr. S.D.N.Y. Feb. 23, 2007) (party did not ratify unauthorized settlement reached by its counsel based on continued reliance on counsel, but rather timely repudiated it). Moreover, Sean did not make any representations to the Court that the Parties had settled, the Plaintiffs did not take any steps resulting in a changed position in reliance on settlement, nor did the Court make any rulings based on the belief settlement had been reached. *Compare Madani v. County of Santa Clara,* 2019 U.S. Dist. LEXIS 16736, at *31-*32 (N.D. Cal. Jan. 31, 2019) (party ratified allegedly unauthorized settlement by remaining silent in the face of multiple representations to the court over four ensuing months that the parties had settled and court rulings based on such representations). In sum, the summary judgment record shows that, while there is no material factual dispute that the Herman Partnership approved the proposed settlement, the same cannot be said with respect to the Herman Trust. As such, the Court will deny the Plaintiffs' Summary Judgment Motion on the Settlement Agreement Count.

The Court, however, does not believe that result warrants summary judgment in favor of the Defendants. While the Court cannot conclude, based on the record on summary judgment, that the Herman Trust approved the Deed in Lieu documents in settlement of the Plaintiffs' claims, it also believes the assertions in David's and Michael's declarations create a dispute regarding a material fact; *i.e.,* did David and Michael, in communications with Sean, authorize his approval of the Deed in Lieu documents on behalf of the Trust? Philip's assertion in his Declaration was belied by his email communications with Sean. The Parties have a material factual dispute whether David and Michael did the same, and the Court believes a further

evidentiary record on this point is required. *See, e.g., Turner v. Frascella Enterprises, Inc. (In re Frascella Enterprises, Inc.),* 2008 WL 2051115, at *7-*8 (Bankr. E.D. Pa. 2008) (on motion to enforce settlement agreement, a sworn statement by a defendant that he and his co-defendant brother were never asked for and never gave authority to counsel to bind them to an unsigned settlement agreement created a disputed issue of fact under the applicable summary judgment standard that would require an evidentiary hearing, but finding that enforcement was otherwise precluded on other grounds). Moreover, the existence of this dispute precludes summary judgment in favor of the Defendants based on their statute of frauds argument, because it leaves open the possibility that the Plaintiffs may prove the existence by clear and convincing evidence of a binding settlement agreement to provide an executed Deed in Lieu, notwithstanding the absence of a signed agreement. The Court will therefore also deny the Defendants' Summary Judgment Motion.

### IV. CONCLUSION

For the reasons stated herein, the Plaintiffs' Summary Judgment Motion and the Defendants' Summary Judgment Motion are both denied, because a material factual dispute exists as to whether David and/or Michael, as co-trustees with Sean to the Herman Trust, conveyed to Sean that he had authority to approve the Deed in Lieu documents on behalf of the Herman Trust, either as its counsel or as an act of the majority of co-trustees under the Herman Partnership Agreement. An Order consistent with this Memorandum shall be issued.

Dated: May 23, 2024

_____
MAGDELINE D. COLEMAN
CHIEF U.S. BANKRUPTCY JUDGE